**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL RAMIREZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN COMPANY,<br><br>Defendant. | Case No.   8:20-cv-784<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Ramirez ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Walgreen Company ("Walgreens" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    Between January 9, 2020 and January 15, 2020, Walgreens was the subject of a data breach when an error within the Walgreens mobile app personal secure messaging feature (the "Walgreens App") "allowed certain personal messages from Walgreens that are stored in a database to be viewable by other customers using the Walgreens mobile app."[1] The disclosed information included users' names, prescription number and drug name, store number, and shipping address where applicable (collectively, the "personal identifying information" or "PII").[2]

2.    This "error" in the app was due to Defendant's failure to conduct proper testing and monitoring of the app.

3.    Plaintiff brings this class action on behalf of himself and all others similarly situated for actual and statutory damages, as well as punitive damages and equitable relief to fully redress the widespread harm Walgreens' wrongful acts and omissions have unleashed.

## THE PARTIES

4.    Plaintiff Daniel Ramirez is a citizen of California who resides in Orange County, California. Mr. Ramirez is a customer of Walgreens who uses the Walgreens App. As part of his use of the Walgreens App, Mr. Ramirez shared his

---

[1] SUBMITTED BREACH NOTIFICATION SAMPLE, https://oag.ca.gov/system/files/Walgreens%20Mobile%20Messaging%20letter%20v2%20%28WAG%20version%29-Final.pdf (last accessed Mar. 27, 2020) (hereinafter "WALGREENS NOTICE".

[2] *Id.*

---

CLASS ACTION COMPLAINT                                                               1

name, address, list of prescriptions, and Walgreens store address where he fills his prescriptions.  When giving his PII to Defendant, Mr. Ramirez reasonably believed that his PII would be securely stored and protected against unauthorized access.  In or about March 2020, Mr. Ramirez received a letter from Defendant informing him that his PII—including his name and "health information"—was accessed in the data breach.  Mr. Ramirez now faces a substantial and imminent risk of identity theft and long-term adverse effects and embarrassment as a result of his PII—including sensitive health information—being compromised.

5.    Defendant Walgreen Company is an Illinois corporation with a principal place of business at 200 Wilmot Road, Deerfield, Illinois 60015. Walgreens does substantial business in the State of Illinois and State of California.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 members of the Classes and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Classes member is a citizen of a state different from Defendant.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred within this District.

## FACTUAL ALLEGATIONS

### I.    BACKGROUND ON DATA BREACHES

8.    A data breach is an incident in which sensitive, protected, or confidential data has potentially been viewed, stolen, or used by an individual unauthorized to do so.[3]

---

[3] Julian De Groot, *The History of Data Breaches*, DIGITAL GUARDIAN (Oct. 24, 2019), https://digitalguardian.com/blog/history-data-breaches (last accessed Feb. 25, 2020).

9.     In many cases, medical information is accidentally exposed through lax office procedures and security.[4]

10.     Data breaches are becoming increasingly more common and harmful. In 2014, 783 data breaches were reported, with at least 85.61 million total records exposed.  In 2019, 3,800 data breaches were reported, with at least 4.1 billion total records exposed.  The average cost of a data breach in the United States in 2019 was $8.19 million.[5]

11.     Consumers are harmed in a variety of ways by data breaches.  First, consumers are harmed financially.  According to the IBM and Ponemon Institute's 2019 "Cost of a Data Breach" report, the average cost of a data breach per consumer was $150 per record.[6]  However, other estimates have placed the costs even higher. The 2013 Norton Report estimated that the average cost per victim of identity theft—a common result of data breaches—was $298 dollars.[7]  And in 2019, Javelin Strategy & Research compiled consumer complaints from the U.S. Federal Trade Commission ("FTC") and indicated that the median out-of-pocket cost to consumers for identity theft was $375.[8]

12.     Data breaches involving health information are likewise problematic. Divulging protected health information like medical conditions can lead to

---

[4] Brian O'Connor, *Healthcare Data Breach: What to Know About Them and What to Do After One*, Experian, June 14, 2018, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed Mar. 31, 2020).

[5] Chris Brook, *What's the Cost of a Data Breach in 2019*, DIGITAL GUARDIAN (July 30, 2019), *https*://digitalguardian.com/blog/whats-cost-data-breach-2019 (last accessed Feb. 25, 2020).

[6] *Id.*

[7] NORTON BY SYMANTEC, 2013 NORTON REPORT 8 (2013), https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf (last accessed Feb. 25, 2020).

[8] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFORMATION INSTITUTE, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last accessed Feb. 25, 2020) (citing the Javelin report).

---

CLASS ACTION COMPLAINT                                                                 3

widespread embarrassment and a loss of reputation.[9]  Indeed, customers may face "physical, emotional, and dignitary harms" as a result of the disclosure of their medical information.[10]

13.    Further, medical data is more valuable than other commonly available personal data.  "While a stolen credit card number might be sold for just a few cents, medical files can be worth as much as $1,000 each."[11]

14.    Consumers are also harmed by the time they spend rectifying the effects of a data breach.  A Presidential identity theft report from 2007 states that:

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in his credit reports and monitor his reports for future inaccuracies, close existing bank accounts, open new ones, and dispute charges with individual creditors.[12]

15.    Further, the effects of a data breach on consumers are not temporary. In a report issued by the U.S. Government Accountability Office ("GAO"), the GAO found that "stolen data may be held for up to a year or more before being used to

---

[9] *See generally* Charles Ornstein, Medical Privacy Often Causes the Most Harm, ProPublica, Dec. 10, 2015, https://www.propublica.org/article/small-scale-violations-of-medical-privacy-often-cause-the-most-harm (last accessed Mar. 31, 2020).

[10] *Code of Medical Ethics Opinion 3.3.3 – Breach of Security in Electronic Medical Records*, AMA, https://www.ama-assn.org/delivering-care/ethics/breach-security-electronic-medical-records (last accessed Mar. 31, 2020).

[11] Brian O'Connor, Healthcare Data Breach: What to Know About Them and What to Do After One, Experian, June 14, 2018, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed Mar. 31, 2020).

[12] U.S. FEDERAL TRADE COMMISSION, THE PRESIDENT'S IDENTITY THEFT TASK FORCE, COMBATING IDENTITY THEFT: A STRATEGIC PLAN 11 (2007), https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf (last accessed Feb. 25, 2020).

---

CLASS ACTION COMPLAINT                                                    4

commit identity theft," and "fraudulent use of [stolen information] may continue for years" after the stolen information is posted on the Internet.[13]  In fact, consumers suffer 33% of the harm from a data breach after the first year.[14]  Thus, consumers can lose <u>years'</u> worth of time dealing with a data breach.

## II.    THE WALGREENS DATA BREACH

16.    Between January 9, 2020 and January 15, 2020, Walgreens was the subject of a data breach when an error within the Walgreens App "allowed certain personal messages from Walgreens that are stored in a database to be viewable by other customers using the Walgreens mobile app."[15]  The information that may have been viewed by another customer includes users' names, prescription number and drug name, store number, and shipping address where applicable.[16]

17.    The "error" within the app was the result of inadequate testing by Defendant.  As one internet security expert explained:

> If the error conditions in the app had been properly tested, this type of issue should have been caught by the quality assurance department and never seen in production.  …  It is unfortunate that often in the rush to go to market, shortcuts are taken and due-diligence testing is skipped in favor of meeting a release date.  It also raises questions as to why wasn't this information encrypted so that even if it was written to a database it would be unreadable and also how come individuals had access to a copy of the database? A proper design would have ensured that any records accessible on the mobile device would be encrypted

---

[13] *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 694 (7th Cir. 2015) (citing U.S. GOV'T ACCOUNTABILITY OFFICE, GAO–07–737, REPORT TO CONGRESSIONAL REQUESTERS: PERSONAL INFORMATION (2007)).

[14] Larry Ponemon, *What's New in the 2019 Cost of a Data Breach Report*, SECURITY INTELLIGENCE, https://securityintelligence.com/posts/whats-new-in-the-2019-cost-of-a-data-breach-report/ (last accessed Feb. 25, 2020).

[15] WALGREENS NOTICE.

[16] *Id*.

---

CLASS ACTION COMPLAINT                                                                    5

using per user keys and that the device would only have access to the information that was relevant to the specific user.[17]

18.    Moreover, despite the incident occurring in January, Walgreens waited two months – until March 2020 – to announce the data breach to consumers.  Upon information and belief, as of the date of this Complaint, not all individuals have received his notice letter of the data breach.

19.    The data breach affected individuals across the United States and in the State of California.

20.    None of the individuals whose PII was accessed, authorized such access or divulgence.

21.    Walgreens has not offered Plaintiff or other affected consumers any remedy for the data breach.  Nor could they as the damage has already been done.  The medical information class members entrusted Defendant to safeguard has been accessed by third parties and that cannot be undone.

22.    Plaintiff bring this action on behalf of himself, the Class, and the Subclass for actual and statutory damages, as well as punitive damages for:  (i) negligence; (ii) negligence per se for violation of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45; (iii) violation of California's Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56, *et seq*.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff seeks to represent a Class defined as all persons or business entities in the United States whose PII was maintained on the Walgreens App that was compromised as a result of the data breach (the "Class").  Excluded from the Classes are Defendant, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case.

---

[17] *See* Lindsey O'Donnell, *Walgreens Mobile App Leaks Prescription Data*, Threatpost, Mar. 2, 2020, https://threatpost.com/walgreens-mobile-app-prescription-data/153361/ (last accessed Apr. 22, 2020).

24.     Plaintiff also seeks to represent a subclass defined as all persons or business entities in the State of California whose PII was maintained on the Walgreens App that was compromised as a result of the data breach (the "Subclass")

25.     Collectively, the Class and the Subclass shall be referred to as the "Classes"

26.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

27.     At this time, Plaintiff does not know the exact number of members of the Classes.  However, given the nature of the claims and the size of Defendant's business, Plaintiff believes that the members of the Classes are so numerous that joinder of all members is impracticable.

28.     Common questions of law and fact exist as to all members of the Classes.  The data breach was generally applicable to all members of the Classes and arose from a common set of acts and omissions by Defendant without regard to the nature or identity of individual members of the Classes, thereby making appropriate relief with respect to the Classes as a whole.

29.     The questions of law and fact common to the Classes include:

30.     Whether Defendant owed a duty to the members of the Classes under federal or state law to protect the PII, provide timely notice of the unauthorized access, provide timely and accurate information as to the extent of the compromised PII, and provide meaningful and fair redress;

31.     Whether Defendant breached such duty;

32.     Whether Defendant's breach provided the means for the data breach;

33.     Whether Defendant was negligent in failing to design, employ, and maintain the Walgreens App;

34.     Whether Defendant's negligence provided the means for the data breach;

35.    Whether Defendant violated Plaintiff and the Subclass's rights under the CMIA;

36.    The appropriate injunctive and related equitable relief for the Classes; and

37.    The appropriate class-wide measure of damages for the Classes.

38.    Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff and all members of the Classes are similarly affected by Defendant's wrongful conduct in that his PII has been exposed to criminal third parties without his authorization.

39.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.

40.    Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.

41.    Plaintiff is represented by counsel competent and experienced in the prosecution of consumer protection and tort litigation.

42.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

43.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Among other things, such treatment will permit a large number of similarly situated persons to prosecute his common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense of numerous individual actions.  The benefits of proceeding as a Classes, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

44.    The prosecution of separate actions by individual members of the Classes is not feasible and would create a risk of inconsistent or varying adjudications.

## COUNT I
### Negligence

45.    Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

46.    Plaintiff brings this claim on behalf of himself and all members of the proposed Classes against Defendant.

47.    Defendant owed Plaintiff and the members of the Classes a duty of care commensurate with the sensitive nature of the PII with which it was entrusted (particularly when aggregated and digitized).  Defendant created this duty by requiring Plaintiff and members of the Classes to provide their PII, storing the PII, using the PII for commercial gain, and making assurances that it would safeguard that information.

48.    In addition, Plaintiff and members of the Classes are current customers, or were otherwise in contractual privity with Defendant, giving rise to a duty owed by Defendant to Plaintiff and members of the Classes.

49.    Defendant's duty required it, among other things, to properly design and maintain the Walgreens App to be free from defects or errors such that the PII of Plaintiff and members of the Classes would not be divulged, and to notify affected persons in the event of a data breach so that Plaintiff and other members of the Classes could take appropriate remedial action.

50.    Had Defendant adequately designed, employed, and maintained appropriate technological and other systems, the PII would not have been compromised.  Further, had Defendant provided timely notice to those affected, Plaintiff and members of the Classes could have taken appropriate remedial action to mitigate the harm of the data breach.

---

CLASS ACTION COMPLAINT

9

51.     Defendant breached its duties of care by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access, failing to properly design to Walgreens App to avoid defects or other errors, and failing to provide timely notice to affected consumers with accurate information so that those affected could begin minimizing the impact of the incident.

52.     Defendant's breach of its duties provided the means for third parties to access, obtain, and misuse the PII of Plaintiff and the members of the Classes without authorization.  It was reasonably foreseeable that such breaches would expose the PII to unauthorized users.  Defendant's breach also exacerbated the harm to Plaintiff and members of the Classes because Defendant failed to provide timely notice to Plaintiff and members of the Classes, giving Plaintiff and members of the Classes the ability to mitigate harm.

53.     Defendant's breach of its duties has directly and proximately injured Plaintiff and members of the Classes, including by foreseeably causing them to expend time and resources investigating the extent to which his PII has been compromised, taking reasonable steps to minimize the extent to which the breach puts his credit, reputation, and finances at risk, and taking reasonable steps (now or in the future) to redress fraud, identity theft, physical, emotional, and mental harm of the data breach, and similarly foreseeable consequences of unauthorized and criminal access to his PII.

54.     Plaintiff and the members of the Classes are entitled to damages in an amount to be proven at trial, and to equitable relief, including injunctive relief.

## COUNT II
### Negligence *Per Se* For Violation of the Federal Trade Commission Act, 15 U.S.C. § 45

55.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

---

CLASS ACTION COMPLAINT                                                      10

56.     Plaintiff brings this claim on behalf of himself and all members of the proposed Classes against Defendant.

57.     Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce." The FTC has held that the failure to employ reasonable measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5.

58.     The FTC has provided guidance on how businesses should protect against data breaches, including: protect the personal customer information they acquire; properly dispose of personal information that is not necessary to maintain; encrypt information stored on computer networks; understand his network's vulnerabilities; and install vendor-approved updates to address those vulnerabilities. FTC guidance also recommends that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating that someone may be trying to penetrate the system; and watch for large amounts of data being transmitted from the system.

59.     Plaintiff and members of the Classes are within the Classes of persons Section 5 of the FTCA was intended to protect.

60.     The harm that has occurred is the type of harm the FTCA was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of his failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and members of the Classes

61.     Defendant owed a duty to Plaintiff and members of the Classes under the Section 5 of the FTCA.

62.     Defendant breached its duty under Section 5 of the FTCA by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access, failing to properly design to Walgreens App to avoid

defects or other errors, and failing to provide timely notice to affected consumers
with accurate information so that those affected could begin minimizing the impact
of the incident.

63.    Defendant's breach of its duties has directly and proximately injured
Plaintiff and members of the Classes, including by foreseeably causing them to
expend time and resources investigating the extent to which his PII has been
compromised, taking reasonable steps to minimize the extent to which the breach
puts his credit, reputation, and finances at risk, and taking reasonable steps (now or
in the future) to redress fraud, identity theft, physical, emotional, and mental harm of
the data breach, and similarly foreseeable consequences of unauthorized and
criminal access to his PII.

64.    Plaintiff and the members of the Classes are entitled to damages in an
amount to be proven at trial, and to equitable relief, including injunctive relief.

## COUNT III
### Violation of the Confidentiality of Medical Information Act,
### Cal. Civ. Code §§ 56, *et seq.*

65.    Plaintiff incorporates by reference the allegations in the preceding
paragraphs as if fully set forth herein.

66.    Plaintiff brings this claim on behalf of himself and all members of the
proposed Subclass against Defendant.

67.    Defendant is a "pharmaceutical company," within the meaning of Cal.
Civ. Code § 56.05(l), and maintained and continues to maintain "medical
information," within the meaning of Cal. Civ. Code § 56.05(j), of "patients" of the
Defendant, within the meaning of Cal. Civ. Code § 56.05(k).

68.    Plaintiff and the Subclass members are "patients" of Defendant within
the meaning of Cal. Civ. Code § 56.05(k) and are "endanger[ed]" within the
meaning of Cal. Civ. Code § 56.05(e) because Plaintiff and the Subclass members
fear that disclosure of their medical information could subject them to harassment or

1    abuse.

2    69.    Furthermore, Plaintiff and the Subclass members, as patients of

3    Defendant, had their individually identifiable "medical information," within the

4    meaning of Cal. Civ. Code § 56.05(j), created, maintained, preserved, and stored on

5    Defendant's computer network, and were patients in January 2020.

6    70.    By making private medical information on the Walgreens App

7    accessible to third parties, Defendant negligently created, maintained, preserved,

8    stored, and then exposed Plaintiff and the Subclass members' "medical

9    information," within the meaning of Cal. Civ. Code § 56.05(j), including Plaintiff

10    and the Subclass members' medical history and mental or physical condition, or

11    treatment.

12    71.    This information was "individually identifiable" within the meaning of

13    Cal. Civ. Code § 56.05(j) because it included information included the names and

14    shipping addresses of Plaintiff and Subclass members that "allow the identification

15    of the individual."

16    72.    Defendant allowed Plaintiff and the Subclass members' medical

17    information to become publicly available on the Walgreens App through a glitch,

18    which allowed such information to be accessed by unidentified unauthorized third

19    parties.

20    73.    Defendant allowed to be published Plaintiff and the Subclass members'

21    medical information through a glitch in the Walgreens App, without the prior written

22    authorization of Plaintiff and the Class, as required by Cal. Civ. Code § 56.10.

23    74.    Defendant did not maintain, preserve, or store medical information in a

24    manner that preserved the confidentiality of the medical information within the

25    meaning of Cal. Civ. Code § 56.101(a).

26    75.    Defendant's failure to obtain the written consent of Plaintiff and the

27    Subclass members before allowing to be published Plaintiff and the Subclass

28    members' medical information that was being stored on the Walgreens App, without

CLASS ACTION COMPLAINT                                                               13

the prior written authorization of Plaintiff and the Subclass members, and Defendant's failure to maintain, preserve, or store medical information in a manner that preserved the confidentiality of the medical information, constitutes a negligent release of Plaintiff and the Subclass members' confidential, individual identifiable "medical information" to an unauthorized person or persons in violation of Cal. Civ. Code § 56.101 of the CMIA.

76.    Furthermore, Defendant's publishing of Plaintiff and the Subclass members' medical information that was being stored on the Walgreens App, was not permissible without written authorization from the Plaintiff and the Subclass members under any exemption under Cal. Civ. Code § 56.l0(c).

77.    As a result of Defendant's above-described conduct, Plaintiff and the Subclass members have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by the CMIA.

78.    Because Civil Code § 56.101 allows for the remedies and penalties provided under Cal. Civ. Code § 56.36(b), Plaintiff and the Subclass members seek nominal damages of one thousand dollars ($1,000) for each violation under Cal. Civ. Code § 56.36(b)(1), and actual damages suffered, if any, pursuant to Cal. Civ. Code § 56.36(b)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    An Order certifying each of the proposed Classes and appointing Plaintiff and his Counsel to represent the Classes;

(b)    An Order enjoining Defendant from engaging in the wrongful conduct alleged herein concerning disclosure and inadequate protection of Plaintiff's and the Classes' PII;

(c)     An Order compelling Defendant to employ and maintain appropriate systems and policies to protect consumer PII and to promptly detect, and timely and accurately report, any unauthorized access to that data;

(d)     An award of compensatory, statutory, and punitive damages, in an amount to be determined;

(e)     An award of reasonable attorneys' fees, costs, and litigation expenses, as allowable by law;

(f)     Interest on all amounts awarded, as allowed by law; and

(g)     Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.


Dated: April 22, 2020                    Respectfully submitted,

                                         **BURSOR & FISHER, P.A**.

                                         By: _____/s/ *L. Timothy Fisher*_____
                                                    L. Timothy Fisher

                                         L. Timothy Fisher (State Bar No. 191626)
                                         1990 North California Blvd., Suite 940
                                         Walnut Creek, CA 94596
                                         Telephone: (925) 300-4455
                                         Facsimile: (925) 407-2700
                                         E-mail: ltfisher@bursor.com

                                         **BURSOR & FISHER, P.A.**
                                         Yitzchak Kopel (*Pro Hac Vice Forthcoming*)
                                         888 Seventh Avenue, Third Floor
                                         New York, NY 10019
                                         Telephone: (646) 837-7150
                                         Facsimile: (212) 989-9163
                                         E-Mail: ykopel@bursor.com

                                         *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT                                                          15